(These cases, because of the pendency of petitions for rehearing, did not reach me in time to be published in their chronological order.—REPORTER.)

SINGER PIANO COMPANY, Appellant, v. BARNARD, WALKER & Co., C. E. WALES, D. E. LYON et al., Garnishees.
PENINSULAR LEAD & COLOR WORKS, Appellant, v. Same Defendants.

**Mortgage by Corporation:** TO BE SECURITY FOR DELINQUENT STOCK SUBSCRIPTIONS: *Rights of general creditors.* The subscribers to a corporation paid one half of the subscription by their individual notes, which were used to pay for goods purchased by the corporation. Before plaintiff became a creditor of the corporation it was voted that the debt represented by the notes was that of the corporation, and the corporate name was signed to the notes. The corporation became insolvent, and a chattel mortgage on its stock was made to the holder of such note after the debts due plaintiff had accrued. Plaintiff brought attachment against the corporation, and garnished the mortgagee *Held,* that the mortgage was void as to plaintiff, since it allowed the incorporators to take property from the general creditors to pay their delinquent subscriptions.

PRIORITIES: *Estoppel of subsequent mortgagee.* The holder of a chattel mortgage on corporate property made expressly subject to a prior chattel mortgage is estopped to set up the invalidity of such prior mortgage, and cannot object to a seizure by corporate creditors of property covered by the prior mortgage.

ADVANCES NOT INCLUDED IN MORTGAGE. Where a garnishee, in an action against a corporation by its creditors, claims to hold possession of certain corporate property only under a chattel mortgage, a claim by him for money loaned the corporation, which was not secured by the mortgage, cannot be allowed.

**Garnishments:** PLEADING BY GARNISHEE: *Personal appearance of.* As to a garnishee should appear for personal examination, a pleading filed by him making claim for money loaned the principal defendant, though verified, should be stricken out.

*Appeal from Dubuque District Court.*—HON. J. L. HUSTED,. Judge.

THURSDAY, OCTOBER 4, 1900.

THESE proceedings by plaintiffs are based upon claims against Barnard, Walker & Co., a corporation. The other defendants were attached as garnishees. They made answers, which were controverted, and upon the hearing on the issues thus raised the garnishees were discharged. Plaintiffs appeal.—*Reversed.*

*Powers, Lacy & Brown* for appellants.

*Lyon & Lyon* for appellees.

WATERMAN, J.—These two cases, with a number of other claims of a similar character, were consolidated and tried together in the district court. The other parties did not appeal, so we are not called upon to consider their rights.

Prior to February 1, 1894, G. S. Barnard, R. S. Walker, and William M. Clewell were in the employ of G. B. Grosvenor Company, a corporation engaged in conducting a wholesale and retail book store. Negotiations had been pending for some months between such corporation and the individuals mentioned for the sale to them of the retail department of the store. On the date named the matter culminated in a sale. Barnard and his associates formed an incorporation called Barnard, Walker & Clewell, with an authorized capital which was not to exceed $25,000, of which $12,000 was to be paid in. Six thousand dollars in amount of the capital stock was to be preferred. To each of the three incorporators there was issued $2,000 of the preferred stock and a like amount of the common stock. Six thousand dollars only in cash was paid in for the capital stock. The cost of the goods purchased was $11,500. Pay-

ment was made therefor with $6,000 in cash, and notes to the amount of $5,500, signed by Barnard and Walker and Clewell individually. To secure the notes the preferred stock was given as collateral. All of these transactions took place on the same day. Thereafter Wiliam F. Barnard purchased the stock of Clewell, and the corporate name was changed by amendment of the articles to Barnard, Walker & Co. This was in February, 1896. At this time Clewell was released from liability by a surrender of such of the old notes as had not been paid, and the execution to the Grosvenor Company of new notes, signed individually by the two Barnards and Walker. Thereafter, on March 4, 1897, at a meeting of the directors of the Barnard, Walker & Co. incorporation, it was voted that the indebtedness represented by the notes mentioned was that of the corporation, and the corporate name was attached as a signer to the notes. All payments made on the notes, it is conceded, were made from receipts of the business of the corporation. The defendant Lyon, who was an officer of the Grosvenor Company, became the owner of the unpaid notes of Barnard, Walker & Co. which had been held by the first-named corporation. The Barnard, Walker & Co. concern became insolvent, and on December 6, 1897, made four chattel mortgages on its stock,—the first to C. E. Wales, which is not here questioned; the second to defendant D. E. Lyon, which is in dispute; and the other two, which were expressly subject to the instruments mentioned, it is claimed are inferior to the lien of plaintiffs. The lien of plaintiffs was acquired through attachment proceedings instituted after the making of these mortgages. Under their writs, Wales and Lyon, who were in possession of the property, were garnisheed. Plaintiff's claim is that the notes given originally for the stock of goods operated as a payment therefor; that they were the individual obligations of the makers, and that it was a legal fraud to mortgage the corporate property to Lyon to secure payment of such notes. Summing up the

original transactions, we find this to have been the state of affairs: The $12,000 of capital stock in the corporation of Barnard, Walker & Clewell was paid for by the three parties to whom it was issued, one-half in cash, and one-half in their individual notes, and these notes were issued as a part of the purchase price of the goods bought of the Grosvenor Company. The stockholders have in fact never paid for the stock. They owe 50 per cent. of its face value. To permit this mortgage to stand is to allow them to take property from general creditors to pay their delinquent subscriptions. Had these individuals paid cash in full for their stock, the corporate property would have been subject now only to corporate debts. Because they gave their notes in part payment, can they, in order to protect themselves, postpone or defeat the claims of creditors of the corporation? If the Lyon mortgage is permitted to prevail against plaintiffs' claims, it will be nothing different from allowing the two Barnards and Walker to take from the assets of the company sufficient property to pay in full for their stock. This would clearly not be lawful. The general rule, to which this case is no exception, is that corporate property is a fund, somewhat in the nature of a trust, for the payment of corporate debts, and that a diversion from this purpose constitutes a fraud. *Upton v. Tribilcock,* 91 U. S. 45 (23 L. Ed. 203); *Clark v. Bever,* 139 U. S. 110 (11 Sup. Ct. Rep. 468, 35 L. Ed. 88); *Railway Co. v. Ham,* 114 U. S. 587 (5 Sup. Ct. Rep. 1081, 29 L. Ed. 235); *Hospes v. Car Co.,* 48 Minn. 174 (50 N. W. Rep. 1119).

But in March, 1897, at a corporate meeting of the Barnard, Walker & Company, this balance due the Grosvenor company was declared a corporate debt, and the name of Barnard, Walker & Co. was added to the notes as a signer. Some effect is claimed for this action. We do not think it has any weight as against creditors. Lyon, who then owned the notes, knew all the facts, and although the debts to plaintiffs had not then accrued, they have a right

to demand that the corporate assets be not diverted from lawful channels. The debts were in existence when the mortgage was made, and it is of the mortgage plaintiffs complain. The two Barnards and Walker were the sole stockholders. It would be strange if their vote could relieve them from a personal liability, and saddle it on the corporation, to the prejudice of corporate creditors. The acknowledgment by the corporation of a debt which it did not owe affords or gives no foundation for a transfer of its property as against corporate creditors existing when the transfer is attempted. If we were to concede that the corporation might give away its property as against subsequent creditors, it cannot make a promise to so give which will bind subsequent creditors to submit to a transfer of the corporate property after their claims have accrued. That is the situation here. There was no consideration given the corporation for attaching its name to the notes. They could not have been enforced against it. At most, the notes stood as promises to give something, but there was no attempt to execute the gift until plaintiff's right had become established. We are clear that the Lyon mortgage is not valid as against the plaintiffs.

It remains to be seen what right plaintiffs have as against the two mortgages made subsequent to that of Lyon. The holders of these mortgages were garnisheed in the present actions, and all proceedings were consolidated on the hearing controverting the answers. The four mortgagees were parties to the controversy, which was tried as an equitable action. So we have all parties in court.

4       The two mortgages made subsequently to these of Wales and Lyon were expressly made subject to the prior instruments. The holders of the last two mortgages are therefore estopped to set up the invalidity of the Lyon incumbrance. As to them it is a valid lien. *Tolerton v. Anderson,* 108 Iowa, 217; *Dwight v. Lumber Co.,* 69 Mich. 127 (36 N. W. Rep. 752);

*Johnson v. Thompson,* 129 Mass. 398.    Being valid as to them, they have no standing to object to the seizure by plaintiffs of property held thereunder to the extent of the amount due on such incumbrance.    There can be no question as to the right of a creditor who has garnished a chattel mortgagee in possession to test the validity of the mortgage in such proceedings.    *Citizens' State Bank v. Council Bluffs Fuel Co.,* 89 Iowa, 618.

Our conclusion is that the mortgage was void as to the plaintiffs, and they should have had judgment against Lyon, garnishee.    The account, properly stated, stands as follows: Lyon should be charged with the value of the property held by him after the Wales mortgage lien is satisfied.    From this he should be allowed to deduct $800 paid to cancel a landlord's lien, and $281.12 taxes paid, both of these being superior liens to those of plaintiffs, and the balance should be subject to the latter's claims.

In a pleading filed by Lyon in response to that controverting his answer, he makes a claim for $350 money loaned the corporation.    This pleading was attacked by motion to strike, but was allowed to stand, and before judgment Lyon was permitted to verify it as a part of his answer.    This, we think, should not have been permitted, nor should the paper be treated as matter of evidence.    *Penn v. Pelan,* 52 Iowa, 535.    But further, on this point, we understand that Lyon took and now claims to hold possession of this property only under his mortgage, and that instrument does not secure the last-mentioned item.    This claim should not be allowed.    Lyon's exact liability not being shown, the cases will have to be remanded.    For the reasons given the judgments are REVERSED.

GRANGER, C. J., not sitting.