DESERET NATIONAL BANK OF SALT LAKE CITY, a Corporation, Appellant, v. WILLIAM KIDMAN and EPHRAIM KIDMAN, Respondents.

### No. 1390.  (71 Pac. 873.)

1. **Chattel Mortgage: Acknowledgment: Identity Must be Known to Officer.**
In the absence of statutory provisions, the law does not permit an officer to take the acknowledgment of a stranger without satisfactory proof of his identity.

2. **Same: How Construed.**
A certificate of acknowledgment to an instrument made pursuant to Revised Statutes, Idaho, section 2958, prescribing the form therefor, should be liberally construed; the. section expressly requiring that it be "substantially" in the form given therein.

3. **Same: Sufficient Compliance with Statute.**
Revised Statutes, Idaho, section 2958, provides that the certificate of acknowledgment must be substantially in the following form (omitting the formal parts): "On this . . . day of . . . in the year . . . before me . . '. personally appeared . . . known to me (or proved to me on the oath of . . . ) to be the person whose name is subscribed to the within instrument, and acknowledged to me that he ('or they) executed the same." The acknowledgment to a chattel mortgage recited (omitting the formal parts): "On this 5th day of September, 1900, personally appeared before me P., the signer of the above instrument, who duly acknowledged to me that he executed the same." The affidavit immediately preceding the acknowledgment, and which was subscribed and sworn to before the same notary, recited that "P., the mortgagor, . . . named in the foregoing mortgage," declares that the mortgage is made in good faith, etc. *Held*, that, reading the certificate in connection with the affidavit, it clearly appeared that the one who executed the mortgage was the same person who acknowledged its execution, and there was a sufficient compliance with the statute.

4. **Same: Affidavit of Good Faith: Defects: Validity.**
Revised Statutes, Idaho, section 3386, requires a chattel mortgage to be accompanied by an affidavit that it is made in good faith,

and without any design to hinder, delay, or defraud creditors. *Held*, that an affidavit was not bad for merely omitting the word "defraud." [1]

**5. Same: Validity as Against Mortgagor: As Against Creditors.**
Under the express provisions of Revised Statutes, Idaho, section 3386, a chattel mortgage is only void as against creditors and subsequent purchasers, etc., in good faith, where not accompanied by affidavit that it is made in good faith and not properly acknowledged and filed for record.

**6. Same: Bona Fide Purchasers: Defense Must Be Pleaded.**
One seeking to defend against a defectively executed chattel mortgage on the ground that he is a bona fide purchaser of the property must plead such defense.

**7. Same: Burden of Proof.**
The burden is on him to sustain the defense.
ROLAPP, District Judge, dissenting.

(Decided March 23, 1903.)

Appeal from the First District Court, Cache County.—*Hon. Charles H. Hart*, Judge.

Action of replevin. The lower court, on the grounds that the affidavit and acknowledgment of the chattel mortgage on the sheep were not in accordance with the law of Idaho and that the mortgage was not sufficient to charge defendants with notice of its existence, instructed the jury to return a verdict for the defendants. From such judgment, the plaintiff appealed.

REVERSED.

*Messrs. Young & Moyle* for appellant.

*Geo. Q. Rich, Esq.*, and *Frank K. Nebeker, Esq.*, for respondents.

---

[1] Petrovitzky v. Brigham, 14 Utah 472; 47 Pac. 666.

BASKIN, C. J.—This is an action of replevin. The answer denies the plaintiff's alleged right to the possession of about 700 head of sheep claimed from defendants, and alleges that the defendants are the owners of, and entitled to the possession of, the same. A jury being impaneled in the case, the plaintiff placed Orson Rumel upon the witness stand, and he testified as follows: "I know the signature of Earnest A. Purnell. Have seen him write his name several times. I saw him write his name to the promissory note." And after identifying the note as the one set out in the mortgage, he further testified "that at the time Mr. Purnell signed said note he signed what purported to be a chattel mortgage. The chattel mortgage was given to secure the above-mentioned note, and Mr. Purnell received $2,400 on the note and mortgage. No payments have been made by Mr. Purnell thereon, either principal or interest, excepting two interest payments. Mr. Purnell is still owing the bank the note. I witnessed the signature of Mr. Purnell to the mortgage, and after it was signed, acknowledged, and sworn to, and the notary's signature and seal to the affidavits attached, I took it myself and mailed it, addressed to the county recorder of Oneida county, State of Idaho." No objection was interposed by the defendants to this testimony.

The plaintiff then offered in evidence a chattel mortgage of a lot of sheep, in which were included the 700 in dispute, executed by one Earnest Purnell, of Cache county, Utah, in favor of the plaintiff, to secure a note for $2,400, dated at Salt Lake City, September 5, 1900, and payable one year after date, with interest at the rate of eight per cent. per annum. The sheep at the time said mortgage was executed were on the range in Oneida county, State of Idaho. Among other stipulations, the mortgage contained the following: "It is further agreed and stipulated that if said mortgagor shall fail to make any payment, as in said promissory not provided, or in case said mortgagee shall at any time deem its debt insecure,

the said mortgagee, or its assigns, may, in its option, declare the principal of said debt to be due, and may take possession of said mortgaged property wherever located, together with the increase thereon, if any, using all necessary force for that purpose."

Attached to the mortgage were the following affidavit and certificates of acknowledgment and recordation of mortgage:

"State of Utah, County of Salt Lake—ss.: Earnest A. Purnell, the mortgagor, H. S. Young, the cashier and agent for the mortgagee, named in the foregoing mortgage, being duly sworn, severally declare, each on oath, that this chattel mortgage is made in good faith to secure the amount and debt therein specified, and without any design to hinder or delay the creditors of said mortgagor. Earnest A. Purnell. H. S. Young.

"Subscribed and sworn to before me a notary public in and for said county at Salt Lake City, Utah, this 5th day of September, A. D. 1900. Hyrum J. Young. [Seal.]

"United States of America. State of Utah, County of Salt Lake—ss.: On this 5th day of September, 1900, personally appeared before me Earnest A. Purnell, the signer of the above instrument, who duly acknowledged to me that he executed the same. Hyrum J. Young, N. P. My commission expires November 24, 1900."

Indorsed:

"Chattel Mortgage No. 480. Recorded at the request of H. S. Young, September 8, A. D. 1900, at 5 minutes past 9 a. m., in book B, Chattel Mortgages, page 123. D. J. Reynolds, recorder.

"State of Idaho, County of Oneida—ss.: I, D. J. Reynolds, recorder of Oneida county, Idaho, do hereby certify the above and foregoing to be a full, true, and correct copy

of the chattel mortgage now on file in my office. Witness my hand and seal of my office at Malad City, Idaho, this the 16th day of September, 1901. [Signed.]   D. J. Reynolds, recorder, by W. H. Richards, deputy."

Defendants' attorney objected to the admission of the mortgage in evidence on the following grounds:   (1)   The mortgage was not dated; (2) that the affidavit that it was made in good faith was sworn to by H. S. Young in his individual capacity, and not as an officer or agent of the plaintiff corporation.; (3) that said affidavit alleged to have been sworn to by H. S. Young and Earnest A. Purnell did not contain, as is required by the statute of the State of Idaho, the word "defraud," or any word of similar import; (4) that the notary's certificate did not recite that Earnest A. Purnell was known to him to be, or proven on the oath of any one to be, the signer of the instrument, as is required by the statutes of the State of Idaho, to-wit, sections 2955 and 2958 of the Revised Statutes of Idaho of 1887; (5) for the reason that it was not recorded in the county of Cache, State of Utah; (6) that the alleged seal of the alleged county recorder of Oneida county, was not attested as provided in section 3378, 3387, subd. 7, Revised Statutes, Utah 1898; (7) that the evidence is insufficient to show that plaintiff is entitled to any of the relief prayed for.   The objections were overruled, and the mortgage admitted "subject to said objections."

Plaintiff thereupon introduced evidence that the 700 sheep claimed were a part of the band of sheep which was mortgaged by the said Earnest A. Purnell, and of which he was the owner; that previous to the institution of this suit the plaintiff demanded from the defendants the sheep in dispute; and that the defendants refused to deliver them to the plaintiff.   Hyrum J. Young, the notary public before whom the mortgage was acknowledged, testified, on behalf of plain-

tiff, in substance, that he was personally acquainted with the said Earnest A. Purnell, and that on or about the 5th of September, 1900, the said Purnell appeared before him, the said Hyrum J. Young, and made the affidavit and acknowledgment hereinbefore set out.

Plaintiff also introduced in evidence the said William Kidman's statement that he bought the sheep in question of Earnest A. Purnell some time in November, 1900; that at the time of the purchase the sheep were in Oneida county, State of Idaho; and that he brought them into Utah—and the following provisions of the Idaho Statutes:

"Sec. 3385.    Chattel mortgages may be made upon all property, goods or chattels not defined by statute to be real estate."

"Sec. 3397.    If the mortgagor of any property mortgaged in pursuance of the provisions of this chapter, while such mortgage remains unsatisfied, in whole or in part, willfully removes from the county or counties where the mortgage is recorded, destroys, conceals, sells, or in any manner disposes of the property mortgaged, or any part thereof, without consent of the holder of said mortgage, he is guilty of larceny and such sale or transfer is void."

"Sec. 2952.    The proof of acknowledgment of an instrument may be made without this Territory, but within the United States, and within the jurisdiction of the officer, before either  .  .  .  a notary public," etc.

"Sec. 2955.    The acknowledgment of an instrument must not be taken unless the officer taking it knows, or has satisfactory evidence, on oath or affirmation of a creditable witness, that the person making such acknowledgment is the individual who is described in, and who executed the instrument; or, if executed by a corporation, that the person making such acknowledgment is the president or secretary of such corporation."

"Sec. 2958.   The certificate of acknowledgment, unless it is otherwise in this chapter provided, must be substantially in the following form:   'Territory of Idaho, County of ———— ss.:   On this . . . day of . . . in the year . . . before me (here insert the name and quality of the officer) personally appeared . . . known to me (or proved to me on the oath of . . .)   to be the person whose name is subscribed to the within instrument, and acknowledged to me that he (or they) executed the same.' "

Also Session Laws of Idaho of 1899, p. 121, as follows:

"Section 1.   That title 12 of chapter 4, sections 3386 and 3387, be amended so as to read as follows:   'Sec. 3386.   A mortgage of personal property is void as against creditors of the mortgagor and subsequent purchasers, and incumbrances of the property in good faith and for value, unless:   First.   It is accompanied by the affidavit of the mortgagor that it is made in good faith and without any design to hinder, delay or defraud creditors.   Second.   It is acknowledged or proven as grants of real estate and the mortgage, or a true copy thereof, is filed for record with the county recorder of the county where such property is located, and kept.'

"Sec. 2.   Section 3387 is amended to read as follows:   'Sec. 3387.   Upon the receipt of any such instrument, the recorder shall endorse upon the back the time of receiving it, and shall file the same in his office, to be kept there for the inspection of all persons interested,' " etc.

"Sec. 3.   All acts and parts of acts inconsistent with this act are hereby repealed."

Some other evidence, which it is not necessary to set out, was introduced by plaintiff; and, when it rested, the defendants' attorney moved that the chattel mortgage be stricken out on the grounds of the original objections.   This motion was denied, whereupon the "plaintiff then admitted that defendants had no other notice of the mortgage, except the notice imparted by the record of it in Oneida county, and that it

25 Utah—25.

was not recorded in Cache county, Utah." "Thereupon the defendants moved the court to instruct the jury, upon the evidence of plaintiff, to bring in a verdict in favor of the defendants and against plaintiff, and upon the grounds stated above as objections to the introduction of the chattel mort·gage." The court, on the grounds that the affidavit and the acknowledgment of the chattel mortgage were not in accordance with the provisions of the statute of Idaho, and that the chattel mortgage was not sufficient to charge defendants with notice of its existence, instructed the jury to return a verdict for the defendants, which was done, and judgment rendered thereon against the plaintiff.

1. In the absence of statutory provisions such as are contained in section 2955 of the Idaho Statutes, the law does not permit an officer to take the acknowledgment of a stranger without satisfactory proof of his identity, and when so taken it is a flagrant violation of official duty. As it is a presumption that officers perform their duty, and only a substantial, and not a strict, compliance with the form set out in the Idaho statute is required by that statute, the acknowledgment in question should not be literally, but liberally, construed. In Kelly v. Calhoun, 95 U. S. 713, 24 L. Ed. 544, Mr. Justice Swayne said: "Instruments like this should be construed, if it can be reasonably done, 'Ut res magis valeat quam pereat.' It should be the aim of courts in cases like this to preserve, and not to destroy. Sir Matthew Hale said they should be astute to find means to make acts effectual, according to the honest intent of the parties. Carpenter v. Dexter, 8 Wall. 513, 19 L. Ed. 426." There are many decisions which hold that "it is the policy of the law to construe acknowledgments liberally, and not to allow a conveyance to be defeated by unsubstantial and technical objections to the certificate of acknowledgment." Wells v. Atkinson, 24 Minn. 165. Certificates in the same form as the one in question, made under statutes which prescribe the

form of the certificate, and require only a substantial compliance therewith, have been sustained in the following cases: Warder v. Henry, 117 Mo. 530, 23 S. W. 776; Wilson v. Quigley, 107 Mo. 98, 17 S. W. 891; Hiles v. La Flish, 59 Wis. 765, 18 N. W. 435; Harris v. Pratt, 37 Kan. 316, 15 Pac. 216; Burbank v. Ellis, 7 Neb. 156. In Northwestern Pac. Hypotheek Bank v. Rauch (Idaho), 51 Pac. 764, the certificate of acknowledgment was objected to on the ground that it did not comply with sections 2921, 2922, 2960, Revised Statutes, Idaho. The statutes in force at the time the certificate was made, as appears from the opinion, did not "require a literal, but a substantial, compliance therewith;" and the court held that the certificate objected to, and which is as follows: "I, L. F. Williams, a notary public in and for the said county and State, do hereby certify that on this 30th day of January, 1893, personally appeared before me A. Rauch and Margaret E. Rauch, his wife, to me known to be the individuals described in, and who executed, the within instrument, and acknowledged that they signed and sealed the same as their free and voluntary act and deed, for the uses and purposes therein mentioned. And I further certify that I did fully apprise the said Margaret E. Rauch, wife of the said A. Rauch, of the contents of said instrument, and of her rights thereto, and the effect of signing the same, and that she did then, freely and voluntarily, separate and apart from her said husband, sign and acknowledge said instrument. Given under my hand and official seal this 30th day of January, 1893. L. F. Williams, notary public. [Seal.]"—was a substantial compliance with the following form prescribed by section 2960 of said statute: "Territory of Idaho, county of  .  .  .  ss.:  On this  .  .  .  day of  .  .  .  in the year of  .  .  .  before me (here insert the name and quality of the officer) personally appeared  .  .  .  known to me (or proved to me on oath of . . . ) to be the person whose name is subscribed to the within instrument, described as a

married woman, and, upon an examination without the hearing of her husband, I made her acquainted with the contents of the instrument, and thereupon she acknowledged to me that she executed the same, and that she does not wish to retract such execution." This decision is sustained by the same court in the cases of Jaeckel v. Pease, 53 Pac. 390; Christenson v. Hollingsworth, 53 Pac. 211; Curtis et al. v. Bunnell, etc., 55 Pac. 659. In the case of Northwestern & P. Hypotheek Bank v. Rauch (Idaho), 51 Pac. 764, the language of the form set out in the territorial statute was followed in the certificate, but differed therefrom in several particulars, and failed to state in the expressed terms of the prescribed form that the wife, without the hearing of her husband, acknowledged that she did not wish to retract the execution of the instrument. The court, in holding that the certificate was a substantial compliance with the statute, quoted the following from the case of Belcher v. Weaver, 46 Tex. 293, 26 Am. Rep. 267: "The general rule upon this subject is that there must be a substantial, though not a literal, compliance with the terms of the statute, and that, although words not in the statute are used in place of others that are, or words in the statute are omitted, yet if the meaning of the words used is the same, or they represent the same fact, or if the omission of a word or words is immaterial, or can be supplied by a reasonable and fair construction of the whole instrument, the certificate will be held sufficient."

This brings us to the question whether the certificate in this case substantially complies with the prescribed form.

The identity of the mortgagor and his acknowledgment are the essential facts required to be shown by the certificate. If it does this, it substantially complies with the statute. In Warder v. Henry, 117 Mo. 538, 539, 23 S. W. 776, the court said: "The point of the objection is that the acknowledgment omits the words 'to me personally known,' after the words 'George W. Warder,' where they first

appear in the acknowledgment.  Now, take the statute, and it will be seen that the officer should certify that 'before me appeared George W. Warder, to me personally known.'  The certificate states, 'before me personally appeared,' etc.  The officer, in making this statement that George W. Warder personally appeared before him, includes therein the proposition that Warder was to him personally known; for, unless personally known, how could he say Warder personally appeared? The meaning and sense of the certificate of acknowledgment is the same as the statute.  In the case of Harris v. Pratt, 37 Kan. 316, 15 Pac. 216, there were two deeds, the acknowledgments of which were contested.  It was held that an acknowledgment of the first, which was made by register in bankruptcy, was not required by the bankrupt law.  In respect to the other the court said:  "The second deed, made by the assignee of said estate to George P. Anderson, was acknowledged before a notary public.  The objection to this acknowledgment is that the notary in his certificate does not show that the assignee was personally known to him to be the person who signed the conveyance.  .  .  .  Now, while the certificate does not say in so many words that the grantor was personally known to him to be the person who signed the conveyance, yet it does state that the assignee personally appeared before him, and that his signature is to the conveyance.  We think this was a substantial compliance with our statute."  In the case of Munroe v. Eastman, 31 Mich. 285, the form of the acknowledgment was not prescribed, but the statute required a deed to be acknowledged by the party or parties executing the same.  The certificate of acknowledgment was objected to because it failed to show that the grantor was known to the officer before whom it was made.  Mr. Justice Cooley, in the opinion, said:  "The justice certifies that the signer and sealer of the subjoined deed acknowledged it, and this implies a knowledge on his part of the fact." Under a statute which requires the acknowledgment to an

instrument, the identification by the certificate of the party executing it is as essential as under the Idaho statute. In the case of Carpenter v. Dexter, 8 Wall. 513-527, 19 L. Ed. 426, Mr. Justice Field said: "The law of Illinois in force in 1847, upon the manner of taking acknowledgments, provides that no officer shall take the acknowledgment of any person unless such person 'shall be personally known to him to be the real person who (executed the deed) and in whose name such acknowledgment is proposed to be made, or shall be proved to be such by a credible witness,' and such personal knowledge or proof shall be stated in the certificate. Looking now to the deed itself, we find that the attestation clause states that it was 'signed, sealed, and delivered in the presence of the subscribing witnesses. One of these witnesses was the justice of the peace before whom the acknowledgment was taken; and he states in his certificate, following immediately after the attestation clause, that the 'above-named William T. Davenport, who has signed, sealed, and delivered the above instrument of writing, personally appeared' before him and acknowledged the same to be his free act and deed. Read thus with the deed, the certificate amounts to this: that the grantor personally appeared before the officer, and in his presence signed, sealed, and delivered the instrument, and then acknowledged the same before him. An affirmation in the words of the statute could not more clearly express the identity of the grantor with the party making the acknowledgment." In the case at bar, looking at the affidavit attached to the mortgage, immediately preceding the acknowledgment, we find from the jurat that the affidavit was subscribed and sworn to before the same notary public who took the acknowledgment of the mortgage. The certificate, read with this affidavit, clearly shows that the party who executed the mortgage was the same person who acknowledged the execution of the same. "An affirmation, in the words of the [Idaho] statute, could not more clearly express the identity of the

grantor [named in the chattel mortgage] with the party making the acknowledgment."

2. A mortgage of personal property is required by section 3386 of the Idaho statutes to be accompanied by the affidavit of the mortgagor "that it is made in good faith and without any design to hinder, delay or defraud creditors." Section 150 of the Revised Statutes of Utah requires a chattel mortgage to be accompanied by the affidavit of the parties thereto "that the same is made in good faith to secure the amount named therein and without any design to hinder or delay the creditors of the mortgagor. The mortgage in question was executed in Utah, and the affidavit of the parties thereto is in strict conformity with the statute of this State. The second ground upon which the trial court directed a verdict for the defendants was that the certificate did not comply with the statute of Idaho. The specific objection urged by defendants' counsel is that the words "or defraud creditors" are omitted in the affidavit of the parties to the mortgage. Notwithstanding the words "or defraud creditors" are not used in the Utah statute, we think that its purpose and legal effect are the same as the Idaho statute. In the case of Hoffman v. Mackall, 5 Ohio St. 124-132, 46 Am. Dec. 637, Mr. Justice Bartley said: "It is argued that an assignment in trust for creditors, which by its provisions tends to hinder and delay creditors, is fraudulent and void. The provision of the statute of the 13th Elizabeth, which was held to be declaratory of the common law in England, and which is said to have been followed literally in the statute of frauds in New York, declares 'every conveyance or assignment,' etc., 'made with intent to hinder, delay, or defraud creditors,' etc.' void. The provision in the Ohio statute omits the words 'hinder' and 'delay.' But I am not aware that this difference of phraseology is the foundation of any material distinction, in legal effect, between the English statute and that of Ohio. That hindering and delaying of a creditor which would bring

an assignment within the operation of the statute of England would, I apprehend, constitute a fraud under the statute of Ohio." In the case of Petrovitzky v. Brigham, 14 Utah 472, 475, 47 Pac. 666, the appellant omitted the word "hinder," but used the words "delay or defraud," and this court held that the affidavit substantially complied with the provisions of the statute of Utah before referred to. Mr. Justice Miner, in the opinion, said: "The question is raised whether the words 'delay or defraud,' as used in the affidavit, is a substantial compliance with the statute, without the use of the word 'hinder.' The words 'hinder' and 'delay' are used as synonymous terms. . . . The Encyclopaedia Dictionary defines the word 'defraud' as meaning to deprive of a right by withholding from another, by indirection or device, that which he has a right to claim or obtain. The words 'hinder' and 'delay' are so practically of the same meaning that the omission of the word 'hinder' in the affidavit does not substantially detract from the object of the statute, or lessen the force of the words used in the affidavit, so as to make it defective, when used in connection with the word 'defraud.' A substantial compliance with the statute is all that is required. To hinder or delay is to do something with an intent to defraud." In 14 Am. and Eng. Ency. of Law (2 Ed.), p. 244, it is stated: "But in order to render a deed fraudulent, it is not necessary that the debtor should intend to defeat the creditor in the collection of his claim. Creditors are entitled not only to be paid, but to be paid as their claims accrue; and a debtor has no more right to postpone payment simply for his own advantage, than to defeat it altogether. A purpose to hinder and delay a creditor is therefore fraudulent, although the debtor may honestly intend that all his debts shall ultimately be paid." The term "creditor," in its widest sense, is one who has a right to demand and recover of another a sum of money on any account whatever. Anderson's Law Dict., 291; Winfield's Words & Phrases, 162; Waples,

Debtor & Creditor, sec. 8. In this sense the term "creditors" was used in the Idaho statute. It appears from the evidence that the plaintiff paid to the mortgagor $2,400 as a consideration for the note and mortgage. The mortgagor had the legal right, in good faith, and without any intention of impairing the legal rights of creditors, to execute the mortgage to secure the payment of the note; and, if made in good faith and without any such intention, it was no infraction of the legal rights of any creditor. There is no legal remedy for fraud unless it impairs a legal right. An act which neither hinders nor delays the creditor in the attainment of his legal rights can not, in any view, defraud him. Therefore the averment in the affidavit in question that "the mortgage is made in good faith to secure the amount and debt therein specified, and without any design to hinder or delay the creditors of said mortgagor," is a negation of any design to defraud them.

3. The execution of the mortgage was shown by the testimony of Orson Rumel, who signed the same as a witness, and by other evidence. The mortgage was therefore valid, as against the mortgagor, and only void under the Idaho statute as against his creditors and subsequent purchasers in good faith and for value, even if it were conceded that the affidavit and certificate of acknowledgment are not sufficient, and that the mortgage was not filed for record in Idaho or Utah. The purchase of property in good faith for value is not available as a defense against a mortgage or conveyance which is valid as against the mortgagor or grantor, unless it is pleaded; and the burden of proving such a defense is upon the defendant, and in his answer he is required, among other things, to allege the consideration, and that it was bona fide and truly paid by him for the property purchased. 3 Estee, Pl., sec. 3850; Maxwell, Code Pl., p. 432 et seq.; 1 Mod. Eq. Prac., 346. The answer in this case fails to allege that defendants were bona fide purchasers, or that they purchased the sheep from the mortgagor or any other

person, and the evidence fails to show that they have actually paid or agreed to pay any money or other consideration for the sheep which the evidence shows they claimed to have purchased from the mortgagor.

Under the facts disclosed by the record, the mortgage was properly admitted in evidence, and the court below erred in directing the jury to return a verdict for the defendants.

From the views we have expressed, it is unnecessary to pass upon the other questions raised by counsel.

The judgment of the lower court is reversed, with costs, and the case remanded for a new trial.

BARTCH, J., concurs.

ROLAPP, District Judge.—I dissent from the views expressed by the learned Chief Justice as to the sufficiency of the affidavit attached to the chattel mortgage in question. I fully agree with the opinion expressed by this court in the case of Petrovitzky v. Brigham, 14 Utah 472, 47 Pac. 666, that the words "hinder" and "delay" are practically synonymous terms. Under our statute the use of either word in the affidavit would make it valid, and the use of any additional words, such as "defraud," etc., would be treated as mere surplusage. Reed v. Worthington, 9 Bosw. 617. But under a statute which provides that a chattel mortgage is absolutely void as to subsequent bona fide purchasers of the mortgaged property unless it is accompanied by the affidavit of the mortgagor that the mortgage is made "without any design to hinder, delay, or defraud," I think that the omission of the word "defraud," or the absence of some word of similar import, is fatal to the validity of the document. It does not seem to me that any amount of reasoning will make the words "hinder or delay" include the word "defraud." The former words simply mean an effort to temporarily impede or intercept some right, property, or interest, which, however, will be ultimately secured; but the word "defraud" means an

effort by unlawful means to absolutely withhold and deprive of such right, property, or interest. While I concede that the word "defraud" may include the words "delay" or "hinder," I can not concur that the latter words include the former. In the absence of statutory provisions to the contrary, the words "delay" and "hinder" involve no criminal intent, while the word "defraud" does. It is true that under certain circumstances an effort to hinder and delay might be evidence of an intent to defraud. As was said by the court in the case of Hoffman v. Mackall, 5 Ohio St. 124, 46 Am. Dec. 637, quoted by the Chief Justice in the majority opinion, "that certain kind of hindering and delaying of a creditor which would bring an assignment within the operation of the statute of England would, I apprehend, constitute a fraud under the statute of Ohio." To emphasize the view of that court that the words "hinder and delay" are not, in and of themselves, synonymous with the word "defraud," the court further on in the same opinion states: "By a reasonable construction, such hindrance and delay only as would operate as a fraud, and are designed as a fraud, come within the operation of the statute." And it was held in that very opinion that the hindrance and delay disclosed by the facts in that case did not come within the definition "defraud," under the Ohio statute. So I find several cases that hold proven intent to hinder or delay conclusively shows intent to defraud. Nicholson v. Leavitt, 6 N. Y. 150, 57 Am. Dec. 499. But all these cases simply advance the doctrine that, as matter of evidence, it shall be considered prima facie or conclusively shown that an established purpose to hinder or delay a creditor will have the effect to defraud such creditor. 14 Am. and Eng. Enc. Law (2 Ed.), p. 244. I have been unable, however, to find any case in which the statute requires the word "defraud" to be contained in an affidavit or acknowledgment which has held that the use of that word might be obviated by the use of the words "hinder or delay." On the

contrary, in a well-considered opinion by the Supreme Court of Wisconsin, we are warned that "the distinction between a mere intent to hinder and delay creditors and the intent to defraud them must not be confounded. The statute clearly recognizes this distinction, and makes void all conveyances made with intent to hinder, delay, or defraud creditors. This language implies that the intent to defraud is something distinct from the mere intent to delay, and it is frequently the case that debtors, with an honest intention to pay their creditors in the end, make some shift or transfer merely to gain time." Pilling v. Otis, 13 Wis. 495; Crow v. Beardsley, 68 Mo. 439.

For these reasons, I think the lower court properly held that the chattel mortgage, introduced by plaintiff below as the only basis of its title, was fatally defective, and void as against the defendants, who were admittedly bona fide purchasers, without actual notice.